Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDRES F., <br><br>    **Plaintiff,** <br><br>    v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>    **Defendant.** | Civil Action No. 19-19527 (ES) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Andres F.'s appeal of the Commissioner of Social Security's decision denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et. seq*. The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 9.1(f). For the following reasons, the Court AFFIRMS the Commissioner's decision.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

On January 14, 2014, Plaintiff filed a claim for SSI under Title XVI of the Act. (D.E. No. 15, Plaintiff's Moving Brief ("Mov. Br.") at 1; D.E. No. 6, Administrative Record ("R") at 141). In that initial application, Plaintiff claimed to be disabled because he suffered from Bipolar Disorder and Attention Deficit Hyperactivity Disorder ("ADHD"). (R. at 155). Plaintiff's first application was denied initially on March 15, 2014, and was denied on reconsideration on April 30, 2014. (*Id.* at 91–95 & 97–99). Plaintiff requested a hearing, which was held on January 28,

1

2016, before Administrative Law Judge ("ALJ") Leonard Olarsch. (*Id.* at 27–50). On February 25, 2016, ALJ Olarsch denied SSI at step five of the five-step sequential process ("Prior Decision"). (*Id.* at 7–17). Plaintiff then sought review of the ALJ's decision from the Appeals Council, and on August 18, 2017, the Appeals Council denied the request for review, making the ALJ's opinion the final decision of the Commissioner. (*Id.* at 1–6). Plaintiff appealed that decision to the district court where, after the matter was fully briefed, former Chief Judge Linares remanded the matter, finding reversible error in ALJ Olarsch's step four determination. *Figueroa v. Comm'r of Soc. Sec.*, No. 17-8239, 2018 WL 6918869, at *6 (D.N.J. Dec. 28, 2018).

Before that decision, Plaintiff filed a second application for SSI on April 26, 2018. By order dated February 15, 2019, the Appeals Council vacated the Prior Decision and instructed the ALJ, on remand, to consolidate Plaintiff's claims, associate the evidence, and issue a new decision on the consolidated claims. (R. at 377). ALJ Meryl Lissek held a new hearing on June 13, 2019 (*id.* at 268–305), and denied Plaintiff's claim for SSI on July 8, 2019 (*id.* at 239–257). Plaintiff filed the instant appeal on October 30, 2019. (D.E. No. 1). This matter is fully briefed and ripe for determination.

## II.   LEGAL STANDARD

### A.   Standard of Review

The Court applies plenary review to questions of law and otherwise applies the standard of "substantial evidence." *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on the context. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In this context, "the threshold for such evidentiary sufficiency is not high." *Id.* Importantly, the

substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry. *Id.* at 1157. Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit has noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### B. Determining Social Security Benefits

To qualify for disability insurance benefits, the claimant must first establish that he is "disabled." *See* 42 U.S.C. § 423(a)(1)(E). "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter*, 247 F.3d 34, 38–39 (3d Cir.2001) (internal citations and quotations omitted). A claimant is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42. U.S.C. § 423(d)(3).

The Secretary of Health and Human Services has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. *See* 20 C.F.R. § 416.920. If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends. *Id.* § 416.920(a)(4). The burden rests on the plaintiff to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden of proof shifts to the Commissioner. *Id.*

At step one, the plaintiff must demonstrate that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. § 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. *Id.* § 416.972(a), (b). If an individual engages in substantial gainful activity,

he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. *Id.* § 416.920(b). If the plaintiff demonstrates he has not engaged in substantial gainful activity, the analysis proceeds to step two.

At step two, the plaintiff must demonstrate that his medically determinable impairment or the combination of his impairments is "severe." *Id.* § 416.920(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. *Id.* § 416.920(c). An impairment or combination of impairments do not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

At step three, the ALJ must assess the medical evidence and determine whether the plaintiff's impairments meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(a)(4)(iii).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether, as of the date last insured, the plaintiff had the residual functional capacity ("RFC") to perform his past relevant work. *Id.* § 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work he had done in the past, the analysis continues to the next step.

In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on his age, education, work experience, and RFC. *Id.* § 416.920(a)(4)(v).

## III. THE ALJ'S DECISION

The ALJ assessed Plaintiff's disability during two periods—the first being a closed period from October 26, 2013, to December 31, 2014, and the second from February 26, 2016, to the present. (R. at 242).

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity during the period from his onset date of October 26, 2013, through his date last insured, December 31, 2014. (*Id.* at 244).[1] At step two, the ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder, ADHD, anxiety disorder, obesity, history of marijuana abuse, and obstructive sleep apnea. (*Id.* at 245). The ALJ also concluded that Plaintiff had a number of non-severe impairments including asthma, his status post gall bladder removal and back pain. (*Id.*). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the regulations. (*Id.*). At step four, "[a]fter careful consideration of the entire record," the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels with some nonexertional limitations, which will be further discussed later in this Opinion. (*Id.* at 247–55). Based on Plaintiff's RFC, the ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id.* at 255). The ALJ based this conclusion on the testimony of the vocational expert who testified that an individual with the Plaintiff's vocational profile would not be able to perform his past relevant work (as a tow truck driver) due to the superior skill level required by the same. (*Id.*). At step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national

---

[1] The ALJ noted that although "the record shows earnings at substantial gainful activity levels for one year, there exists a period of time of 12 months or more wherein the claimant was not working at substantial gainful activity levels. As such, the decision addresses such period of time." (R. at 244).

6

economy that the claimant can perform." (*Id.* at 256). Accordingly, the ALJ found that Plaintiff had not been disabled as defined by the Act since October 26, 2013. (*Id.*).

## IV. DISCUSSION

Plaintiff assigns several claims of error to the ALJ's decision. He argues that the ALJ did not adequately consider Plaintiff's sleep apnea or obesity at steps three and four of the analysis. (Mov. Br. at 11–23). Additionally, he argues that the ALJ failed to adequately consider Plaintiff's mental impairments and ignored relevant evidence pertaining to those impairments. (Mov. Br. at 23–32). Plaintiff asks the Court to "reverse the decision of the Commissioner or in the alternative, remand these claims to the Commissioner for reconsideration." (*Id.* at 1). The Commissioner opposes reversal and remand. (*See generally* D.E. No. 16 ("Opp. Br.")).

### A. Sleep Apnea

Plaintiff argues that the ALJ failed to mention sleep apnea in the step three medical equivalence discussion either alone or in combination with Plaintiff's severe obesity and ignored sleep apnea in the RFC determination. (Mov. Br. at 15). These arguments are unpersuasive.

Regarding the ALJ's step three analysis, Plaintiff suggests that the ALJ should have analyzed listings 3.00P1 and 3.09. (*Id.*). Listing 3.00P1 provides that sleep-related breathing disorders such as sleep apnea are "characterized by transient episodes of interrupted breathing during sleep, which disrupt normal sleep patterns." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00P1. Listing 3.09 describes "chronic pulmonary hypertension due to any cause," which is "documented by mean pulmonary artery pressure equal to or greater than 40 mm Hg as determined by cardiac catheterization while medically stable." *Id.* § 3.09.

Although it is true that the ALJ failed to mention either listing in the step-three analysis, Plaintiff has not met his burden of demonstrating why any such error is harmful. "Ordinary

7

harmless error review . . . is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x. 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *See Shinseki*, 556 U.S. at 409. To show harmfulness, Plaintiff must explain how he "might have prevailed at step three if the ALJ's analysis had been more thorough." *Holloman*, 639 F. App'x at 814. Specifically, Plaintiff must "affirmatively point[] to specific evidence that demonstrates he should succeed at step three." *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016).

Plaintiff does not do so here. Plaintiff makes a sterile claim that the ALJ should have considered Listings 3.00P1 and 3.09 at step three, but he fails to identify any evidence of record to suggest that Plaintiff's sleep apnea, individually or in combination with his other impairments, met the requirements of those listings. Thus, even if the ALJ erred at step three, remand is not appropriate because Plaintiff has not shown the error was harmful. *Woodson*, 661 F. App'x at 766.[2]

Plaintiff's challenge to the ALJ's consideration of his sleep apnea at step four is similarly unpersuasive. At step four, the ALJ stated the following about Plaintiff's sleep apnea:

> With respect to the claimant's sleep apnea, the record shows the claimant presented in July 2018 for evaluation for sleep apnea. He reported a history of snoring. He noted if his environment was quiet during the day, he would be able to fall asleep. He noted driving was not an issue. He reported his weight fluctuated up and down over the years. He reported waking up unrested. He noted being unaware of awakenings. He noted sometimes he was able to sleep for 2 days. He noted waking himself up with his snoring but denied headaches. He reported smoking half a pack of cigarettes per day for the past

---

[2] For this same reason, to the extent Plaintiff argues more generally that the ALJ failed to combine Plaintiff's severe impairments and compare the joint effect of them to the Listings to determine medical equivalence, any such argument is unpersuasive. (*See* Mov. Br. at 13). Aside from the Listings and other references Plaintiff makes in connection with his sleep apnea and obesity specifically (as discussed herein), Plaintiff does not identify any additional Listing that the ALJ should have considered.

> 15 years. He denied alcohol use or regular exercise. He indicated he was not presently working. He acknowledged drinking 2 cups of coffee per day. He was noted to be severely obese, with a BMI of 35. Examination noted normal findings. He had normal breath sounds and effort with no accessory muscle usage or stridor. He was not in any respiratory distress, with no decreased breath sounds, wheezes, rhonchi or rales. He was alert and oriented with normal coordination (Exhibit B6F).
>
> Testing showed severe sleep apnea. He reported daytime sleepiness and fatigue. He was advised to use a CPAP machine as well as to stop smoking (Exhibit B8F).
>
> Overall, the record suggests the claimant's sleep apnea is controlled with CPAP. Treatment notes generally suggest the claimant is alert, with logical, coherent and goal directed speech and thought processes.

(R at 252–53). Plaintiff takes issue with this analysis, stating that the psychiatric evidence does not generally suggest that Plaintiff's thought processes are logical, coherent, or goal directed. (Mov. Br. at 16). In support, Plaintiff cites to the Commissioner's examining psychologist's mental status examination from 2014, which revealed "impaired short-term memory, low borderline intelligence, racing thoughts, poor and concrete abstractions and chronic bipolar disorder, type 2, 'that will affect his ability to function in the occupational and social spheres of life.'" (*Id.* (citing R. at 236–237)). Plaintiff suggests that it is not clear "[h]ow much of this is related to the effects of daytime somnolence and fatigue caused by sleep apnea." (*Id.*). In other words, Plaintiff seems to suggest that there is evidence in the record that contradicts the ALJ's conclusion that Plaintiff's sleep apnea is controlled.

There are several problems with this argument. First, Plaintiff deflects on the question whether Plaintiff's sleep apnea actually causes any of the symptoms cited in the 2014 examination, and Plaintiff does not point to any other evidence suggesting any limitations resulting from Plaintiff's sleep apnea (either alone or in combination with his other impairments). Second, even assuming the symptoms could be attributable to Plaintiff's sleep apnea, the evaluation Plaintiff

9

cites to is dated February 11, 2014. (R. at 235–237). It therefore does not contradict the ALJ's finding that, when Plaintiff presented for an evaluation of sleep apnea in 2018, treatment notes generally suggest the claimant was alert, with logical, coherent and goal-directed speech and thought processes. (R. at 252–53). Nor does the cited report contradict the ALJ's conclusion that Plaintiff's sleep apnea was controlled with CPAP. (*Id.*). And finally, even if this single piece of evidence were contradictory, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision" where, as here, "the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).[3]

### B.   Obesity

Plaintiff similarly challenges the ALJ's consideration of his obesity at steps two and three of his analysis. According to Plaintiff, because his obesity was not discussed at step three, the Court cannot conduct meaningful review of the ALJ's decision and the decision is contrary to the Third Circuit's decision in *Diaz v. Comm'r Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In *Diaz*, the Third Circuit explained that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with h[is] impairments, on h[is] workplace function at step three and at every subsequent step." *Id*. Meaningful review is more than a "bare conclusion" or "conclusory statement." *Burnett*, 220 F.3d at 119. But meaningful review does

---

[3]   Plaintiff's counsel posits a rhetorical question asking why sleep apnea is deemed a severe impairment at step two if it is "controlled" and if "controlled" means that it produced no limitations or work-related restrictions. But whether an impairment is "severe" for purposes of the step-two analysis, and whether it produces work-related limitations for purposes of the step-four analysis, are distinct questions. *Wyatt v. Comm'r of Soc. Sec.*, No. 10-6751, 2011 WL 4900013, at *5 (D.N.J. Oct. 13, 2011) ("It is highlighting the obvious to note that steps two and four are different steps, and that it is frequently the case that an ALJ finds a severe impairment at step two, but does not find that said impairment limits the claimant's residual functional capacity at step four."). Moreover, because Plaintiff does not actually suggest any limitations resulting from his sleep apnea or obesity, there is the possibility that the ALJ actually erred at step two in terming these impairments "severe." Any such error would be harmless.

10

not require the use of particular language or a particular format; it requires sufficient development of the record and explanation of the ALJ's findings. *Jones*, 364 F.3d at 505.

It is true that the ALJ's analysis of Plaintiff's obesity at step three is scarce. The ALJ noted that he evaluated Plaintiff's obesity "pursuant to the extensive and detailed guidelines set forth in SSR 19-2, including the references in the listings contained in sections 1.00Q, 3.00I, and 4.00F." (R. at 245). The ALJ then summarily concluded that he "fully considered obesity in the context of the overall record evidence in making this decision." (*Id.*).

Notwithstanding, the decision as a whole allows the Court to conduct a meaningful review of the ALJ's consideration of Plaintiff's obesity. Specifically, at step four, the ALJ stated the following:

> In the present case, the claimant's file does not contain evidence indicating that his obesity alone has caused him to be unable to work, nor does it show that in conjunction with his other impairments, it has disabled him, although weight loss has been suggested. As outlined above, the claimant testified his physical impairments do not prevent him from working. Treatment[] notes show intermittent complaints of back pain, with examinations showing only some tenderness. There is no suggestion the claimant has any difficulty walking or any reduced ranges of motion, strength, sensation or reflexes nor any signs of atrophy, incoordination or tremors. The record shows no asthma exacerbations or hospitalizations or emergency care. Thus, the claimant's obesity is not, by itself, nor in conjunction with his other listed impairments, so severe as to prevent him from working.

(*Id.* at 253).

To be sure, Plaintiff correctly points out that some of the ALJ's language suggests that he considered whether Plaintiff's obesity prevents him from working entirely, which is not the relevant inquiry at step four. The relevant inquiry is whether Plaintiff's obesity, either alone or in combination with his other impairments, causes any work-related limitations that should be considered in developing Plaintiff's RFC. Nevertheless, the ALJ's analysis as a whole suggests

11

that the ALJ properly considered whether Plaintiff's obesity causes any limitations. He specifically considered any physical limitations such as back pain, difficulty walking, reduced ranges of motion, strength, sensation, or reflexes; any signs of atrophy, incoordination, or tremors; and any respiratory limitations, such as asthma exacerbations. (*Id.*).

Still, even assuming that Plaintiff is correct and that the ALJ should have performed a better analysis at steps three and four regarding his obesity, Plaintiff fails to show how the outcome would have been different if the ALJ had done so. As discussed *supra*, harmless error review is applicable to administrative appeals, and it is Plaintiff, as the party challenging the agency's determination, that bears the burden of showing harmfulness. *Holloman*, 639 F. App'x. at 814 (citing *Shinseki*, 556 U.S. at 409); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). That means Plaintiff must point to specific evidence and explain how he might have prevailed at step three or step four if the ALJ had more thoroughly analyzed his obesity. *See Holloman*, 639 F. App'x at 814; *Woodson*, 661 F. App'x at 766. Nothing in *Diaz* alleviates Plaintiff from this burden. Yet Plaintiff fails to point to any evidence to support his position, let alone evidence that requires a different result at steps three and four. Instead, Plaintiff spends several pages summarizing the Court's responsibility under *Diaz* and the Regulations and declaring it a "factual unlikelihood" that Plaintiff's obesity does not cause work-related limitations. (Mov. Br. at 21). Such unsupported claims of error are insufficient. *Santini v. Comm'r of Soc. Sec.*, 413 F. App'x 517, 520 (3d Cir. 2011) (finding the ALJ's consideration of obesity sufficient where the claimant did not provide evidence "indicating that her obesity ha[d] a significant effect on her functional capacity").

### C. Discussion of Mental Impairments

Finally, Plaintiff argues that the ALJ ignored treating and examining physicians' findings with respect to his mental impairments—those being bipolar disorder, ADHD, and anxiety disorder. Those mental impairments, Plaintiff claims, render him disabled at step three and should have affected the ALJ's RFC determination. (Mov. Br. at 23–32).

At step three, the ALJ analyzed Plaintiff's mental impairments under listings 12.04 and 12.06. (R. at 245). Both listings contain three lists of criteria, known as Paragraphs A, B, and C. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06. For both listings, the claimant must satisfy paragraphs A and B *or* A and C. Here, the ALJ did not discuss paragraph A for either listing, but he considered paragraphs B and C. (R. at 245–47). For both listings, paragraphs B and C are identical.

Paragraph B requires that the mental impairments result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting and managing themselves. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Having a marked limitation means that one's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.* § 12.00(F)(2)(d). Having an extreme limitation means that you are not able to function in an area independently, appropriately, effectively, and on a sustained basis. *Id.* § 12.00(F)(2)(e). With respect to the paragraph B criteria, the ALJ discussed each area of functioning and found only moderate limitations as to each, citing to evidence of record in his analysis. (R. at 245–47).

Paragraph C requires that the asserted mental disorder "be 'serious and persistent'"; that is, there must be a medically documented history of the existence of the disorder over a period of

13

at least 2 years, and evidence that satisfies the criteria in both C1 and C2." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00G(2)(a). "The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder" *Id.* § 12.00G(2)(b). "The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment." *Id.* § 12.00G(2)(c). As to paragraph C, the ALJ concluded that the medical evidence of record did not establish the presence of paragraph C criteria because it "does not show such marginal adjustment that the claimant has minimal capacity to adapt to changes in the environment or some new demands," or that "simple changes or increased demands have led to a deterioration of the claimant's functioning or inability to function outside the home." (*Id.* at 247).

At step four, the ALJ further discussed Plaintiff's mental impairments and the relevant evidence of record. "After careful consideration of the entire record," the ALJ found that Plaintiff's RFC was as follows:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can do work that can be learned in 1 month or less and that involves simple instructions. The claimant can have occasional contact with supervisors and minimal contact with the general public. The claimant can work in proximity of coworkers but not together with them. The claimant can work in jobs where the routine does not change throughout the day. The claimant can work in jobs that do not involve a lot of work-related decisions.

(*Id.* at 247–48). The ALJ's justification of the RFC is explained by an evaluation of the evidence of record, an analysis of Plaintiff's symptoms, and an explanation of the weight accorded to various pieces of medical and opinion evidence.

14

Plaintiff primarily challenges the ALJ's determination that he only suffers from moderate limitations stemming from his mental impairments, but also argues that the same error permeates the ALJ's RFC determination. (Mov. Br. at 26–32). In support, Plaintiff cites to three pieces of evidence that he says the ALJ "ignored" at steps three and four: (i) the report of Judith E. Rosenstein, Plaintiff's treating psychotherapist, dated January 18, 2016 (R. at 622–24); (ii) the evaluation conducted by Dr. Ernesto Perdomo, the Commissioner's consulting psychologist, in February 2014 (R. at 235–38); and (iii) the evaluation conducted by Dr. Ronald Silikovitz, the Commissioner's consulting psychologist, in August 2018 (R. at 612–16). (Mov. Br. at 23 & 27). Taken together, Plaintiff argues, this evidence compels a different outcome at steps three and four.

The Court disagrees. Contrary to Plaintiff's argument, the ALJ did not ignore this evidence. The ALJ discussed the consultative examinations at length, in the context of steps three and four. (*See e.g.*, R. at 246–247 & 249–51). The ALJ noted some of same the limitations that Plaintiff now highlights, including, *inter alia*, Plaintiff's depressed mood and affect; his impaired short-term memory and mildly impaired long-term memory; his impaired concentration; his low borderline range intelligence. (*Compare* R. at 246 & 250, *with* Mov. Br. at 27–28 (quoting R. at 236–37)). In determining that Plaintiff suffered from moderate limitations at step three, the ALJ highlighted *other* evidence in the record, too, including additional findings made by the consultative examiners and other treatment notes in the record. For example, in connection with understanding, remembering, and applying information, the ALJ pointed to, *inter alia*, Dr. Perdomo's findings that Plaintiff had organized and focused thought processes, that he spoke relevantly and coherently, and that he could understand and follow instructions of moderate complexity. (R. at 246; *see also id.* at 236). As another example, in connection with interacting

15

with others, the ALJ cited Dr. Silikovitz's findings that Plaintiff was cooperative and open, and treatment notes from 2018 indicating that the claimant was calm and friendly. (*Id.* at 246).

At step four, the ALJ discussed the foregoing and additional evidence in developing Plaintiff's RFC. Also at step four, the ALJ discussed Rosenstein's opinion. Specifically, the ALJ discussed the content of psychotherapist Rosenstein's letter, but assigned it little weight because Rosenstein had seen Plaintiff for a short time (two months), no official records of treatment notes were submitted, and her opinions seem to rely on Plaintiff's self-reporting. (R. at 254). The ALJ noted that although the record did not support Rosenstein's opinion that Plaintiff had marked or extreme limitations in certain areas, the concerns outlined in her opinion were "considered and accounted for in the residual functional capacity by limiting the claimant's interactions with supervisors, coworkers, and the public as well as limited the claimant to only simple work and simple decision-making." (R. at 254).

Simply put, the ALJ considered and analyzed the evidence Plaintiff says was ignored. It seems, then, that Plaintiff asks this Court to reevaluate and reweigh the evidence that the ALJ has already considered. But "the Court cannot re-weigh the evidence, and if the Court finds that the ALJ's decision is based on substantial evidence it must affirm even if the Court would have decided the case differently." *Nieves v. Comm'r of Soc. Sec.*, No. 20-2590, 2021 WL 2682629, at *2 (D.N.J. June 30, 2021). Here, the ALJ supported his decision with substantial evidence by citing various pieces of evidence in the record and explaining the weight he accorded to various evidence and why. Accordingly, the Court rejects Plaintiff's argument that his mental impairments were inadequately considered at steps three and four and rejects his request to reverse or remand this case on these grounds.

## V. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner of Social Security.  An appropriate Order accompanies this Opinion.


Date: March 14, 2022                                    /s/ Esther Salas_____
                                                        **Esther Salas, U.S.D.J.**